## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF IOWA

IN RE:                      )
                           )
DHIRAJLAL A. GOVANI AND   )   CHAPTER 7
JULIE D. GOVANI,           )
                           )   BANKRUPTCY NO. 12-00429
          Debtors.      )

                           )
UNITED STATES TRUSTEE    )
DANIEL M. MCDERMOTT    )   ADVERSARY NO. 12-09076
                           )
         Plaintiff,      )
v.                          )
                           )
DHIRAJLAL A. GOVANI AND   )
JULIE D. GOVANI,           )
                           )
         Defendants.    )

## TRIAL RULING

This case came before the Court for trial in Cedar Rapids, Iowa on the United States Trustee's Complaint seeking denial of Debtors' discharge under 11 U.S.C. § 727. Janet Reasoner appeared on behalf of the U.S. Trustee. Steve Klesner appeared on behalf of Debtor/Defendants. The Court took the matter under advisement. The parties filed post-trial briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## STATEMENT OF THE CASE

The U.S. Trustee seeks a determination that Debtors are not eligible for a bankruptcy discharge under 11 U.S.C. § 727(a)(2), § 727(a)(4)(A), and § 727(a)(5). The U.S. Trustee provided evidence at trial that Debtors did not accurately report all of their prepetition assets and transfers and then signed under oath the statement of financial affairs and schedules containing incorrect information. The U.S. Trustee argues that Debtors committed these acts with the intent to hinder, delay, or defraud the estate or a creditor, and knowingly and fraudulently signed the incorrect statements and schedules. The U.S. Trustee also alleges that Debtors have not provided documentation accounting for the use of cash withdrawn from bank accounts prepetition. The U.S. Trustee argues that Debtors have failed to satisfactorily explain the use of this cash, which is now unavailable to the estate.

Debtors admit they failed to disclose assets and transfers, made errors and omissions in the signed documentation, and spent cash. However, they deny that these mistakes merit a denial of their bankruptcy discharge. Debtors deny that the transfers or omissions were done with the intent to hinder, delay, or defraud the estate or a creditor. Debtors also argue and presented evidence that the incorrect statements on the schedules and statement of financial affairs were not made knowingly and fraudulently. Finally, Debtors argue and presented evidence that

2

they have adequately explained use of the cash.   The Court finds Debtors'

evidence to be credible, and as explained below, finds that the U.S. Trustee has not

proven all of the elements of 11 U.S.C. § 727(a)(2), § 727(a)(4)(A), or § 727(a)(5).

## FINDINGS OF FACT

Debtors filed for Chapter 7 bankruptcy on March 9, 2012.  The parties

largely agree on the facts of this case, but dispute the characterization of those facts

and Debtors' intent.  Mr. Govani testified for Debtors.  Debtors moved to the

United States from India in 1989.  English is Mr. Govani's third language.  He

testified that he is better at speaking English than he is reading and writing it.  Mr.

Govani's difficulty with English was very evident during his testimony.  Mr.

Govani testified that his wife, co-debtor Mrs. Govani, has even poorer English.

Mrs. Govani did not testify at trial.

From 1989 to 2008, Debtors lived in Indiana.  In 2008, they moved to Iowa

after they purchased the Rodeway Inn, a budget hotel, in Cedar Rapids.  They

retained their home in Indiana, and rented it out.  Debtors both ran and lived in the

hotel with their two sons.  They had a very modest, if not Spartan, lifestyle in their

day-to-day living.  The purchase of the hotel was facilitated by a first mortgage for

$1,050,000, which included a personal guarantee, and a second mortgage from the

previous owners for $150,000.  Mr. Govani bought the hotel to pursue the

"American dream" of owning and running a business. The business did not do well from the beginning.

During Debtors' descent into bankruptcy, Debtors made a number of transactions to which the U.S. Trustee objects. First, Debtors frequently ran their personal credit cards at the hotel and then withdrew that money from the business account in cash to pay personal debts or expenses. Through this method, Debtors received cash advances from their credit cards. Mr. Govani testified that he did not see anything wrong with using the credit cards in this fashion. He stated that he had called the credit card company to check on this practice and the person he spoke with told him this was okay. Debtors also opened a new credit card account in order to obtain more advances at their business. Debtors opened that account on August 5, 2011. They immediately charged $5,000 at their business. They charged an additional $3,400 three days later.

Debtors also withdrew large amounts of cash for living expenses. For instance, on April 18, 2011, Debtors withdrew $10,000 from their personal bank account. Mr. Govani explained how this money was used to pay living expenses. Since Debtors lived in the hotel, they did not have a kitchen and ate out frequently. Additionally, they frequently used cash to pay for basic living expenses because Mrs. Govani did not know how to write a check.

The U.S. Trustee pointed out that Debtors also paid back a $5,000 loan to a personal friend, Ratilal Patel, and made Mr. Patel a $3,000 loan on July 5, 2011. The funds for this transaction were acquired through the process of running Debtors' personal credit card at their business, and then withdrawing the funds from their business.  All of this occurred seven to nine months before the bankruptcy filing.

By June 2011, Debtors stopped making payments on the motel mortgage. That same month, CRST—a local trucking company—made an offer to buy the motel for $1,000,000.  Debtors declined the offer, because it would not be enough to pay off the two mortgages.  However, the two parties continued negotiations and Debtors were hopeful they could get a price to pay all bills and make a small profit. On July 26, 2011, Debtors met with Attorney Janet Hong, a well-respected lawyer, to negotiate the sale of the motel to CRST.

The day after meeting with Attorney Janet Hong about the potential sale of the hotel, Mr. Govani purchased $16,195 of jewelry from Raj Jewels.  The purchase consisted of a gold bangle, a gold bracelet, and two gold chains.  At trial, Mr. Govani testified that he purchased the gold as a gift for his wife because he had never previously been able to purchase a nice gift for her—and they had lived a meager existence for quite some time.  He also noted his belief at the time was that the hotel would sell for a profit and he felt he could afford the purchase.

Debtor originally told the U.S. Trustee that he had made the jewelry purchase as a short-term investment in gold.

Soon after that, Debtors also made additional purchases that the U.S. Trustee objects to. Debtors purchased $4,515.34 in electronics at Best Buy on August 4, 2011. This purchase consisted of a laptop, a tablet, and a home projection theater. In late August 2011, Debtors also purchased $700 in gas cards, paid approximately $2,000 for three storage units in Indiana for storage while they lived in the hotel, and paid an annual life insurance premium of $2,557.18.

On August 12, 2011, Mr. Govani sold the gold bangle purchased three weeks earlier for $8,000 cash to a hotel guest. Mr. Govani testified that he realized he needed the money in order to make the upcoming franchise payment for the business. He decided it was best if he sold the bangle even though it made him feel bad to take a gift back from his wife.

On October 28, 2011, a foreclosure action was filed against Debtors' company, Deep Hotel, Inc. In November and December 2011, Debtors paid off a handful of debts. Debtors repaid a $25,110 life insurance loan and paid three life insurance premiums totaling $10,004.00. Debtors also paid their Indiana real estate taxes totaling $1,342.04. The U.S. Trustee points out that on January 8, 2012, Debtors purchased an additional $597.03 of electronics from Best Buy on their credit cards.

6

Mr. Govani testified that throughout this period he believed they would sell the hotel for a high enough price to pay off the business debts. He had hope that it would even sell for more. He testified that he was making these purchases under this belief. He also noted he intended to take a wage paying job in order to pay off any personal debts remaining.

At some point, CRST offered Debtors $1,210,000 for the motel, which Debtors intended to accept. However, the deal fell through when the previous owner of the motel, who held the second mortgage on the property, refused to accept less than full payment in order to release that lien.

Attorney Janet Hong informed the Debtors that CRST was not purchasing the business on January 9, 2012. Debtors met with employees from Hong's law office that same day to begin the bankruptcy process. On January 11, 2011, Debtors paid $8,200 in state sales tax using their credit card. Mr. Govani testified that Attorney Janet Hong informed him that that was improper and that he would have to pay it back. On January 13, 2012, Debtors filled out a bankruptcy worksheet at the Hong law office. They also had another meeting on February 14, 2012. Debtors reviewed the completed bankruptcy paperwork and filed for chapter 7 bankruptcy on March 9, 2012.

It is undisputed that assets and transactions were missing from Debtors' original schedules and statement of financial affairs ("SOFA"). On May 18, 2012,

7

Debtors amended their schedules for the first time to delete a whole life insurance

policy from New York Life worth $11,644.11.  Mr. Govani testified that this was

in error and the life insurance policy was not sold.

On May 23, 2012, Discover Card filed an adversary action concerning the

gold jewelry purchased for $16,195 on July 27, 2011, which was purchased on

Debtors' Discover card.  Debtors' original filings only listed $2,000 in jewelry.

Debtors amended their SOFA to add the sale of the bangle that day.  However, no

other amendments were made at that time concerning Debtors' jewelry.  The U.S.

Trustee followed up with a letter dated June 7, 2012 requesting that Debtors

itemize the jewelry purchase made on July 27, 2011.  Debtors subsequently

amended their Schedule B on July 3, 2012 to increase the value of the jewelry they

owned to $3,000.  They itemized the jewelry owned (as the U.S. Trustee requested)

to show two gold chains, a gold bracelet, a diamond locket, and a diamond ring.

Mr. Govani did not include the gold bangle because he no longer owned it.

Debtors also added to their Schedule B a Menards store credit for $2,802.88 and

the additional electronics purchased on August 4, 2011, listing the value as $2,700.

Debtors also amended their SOFA to include the $8,000 transfer to Mr. Patel.

On July 30, 2012, the U.S. Trustee filed this complaint.  On August 27,

2012, Debtors amended their SOFA again to report that the $8,000 payment to Mr.

Patel consisted of a $5,000 loan repayment and a $3,000 loan.  They also added the

8

repayment of the $25,110 life insurance loan.  That day, they also amended

Schedule B to add the $3,000 loan remaining unpaid by Mr. Patel.  Finally,

Debtors filed an amendment to add Mr. Govani's interest as an officer of White

Horse Liquors, Inc.  The U.S. Trustee was not satisfied by these amendments and

continued to pursue the case to trial.

## PARTIES' ARGUMENTS

The U.S. Trustee seeks denial of Debtors' discharge under three provisions:

11 U.S.C. § 727(a)(2), § 727(a)(4)(A), and § 727(a)(5).  First, the U.S. Trustee

seeks a denial of Debtors' discharge under § 727(a)(2), which allows the Court to

deny a discharge if a debtor transfers or conceals property within one year of filing

for bankruptcy, with the intent to hinder, delay, or defraud a creditor or the estate.

The U.S. Trustee asserts seven grounds for denial of discharge under § 727(a)(2):

1) Debtors transferred or concealed the gold bangle; 2) Debtors transferred $8,000

to Ratilal Patel; 3) Debtors charged $6,000 on their personal Discover card at their

business, then withdrew that money from the business and either transferred or

concealed it; 4) Debtors charged $4,515.34 on their Discover Card at Best Buy,

and did not list anything on their original Schedule B consistent with such a large

purchase; 5) Debtors concealed their $2,802.88 merchandise credit at Menards by

not listing it on their original Schedule B; 6) Debtors concealed jewelry by not

listing it on their original Schedule B; and 7) Debtors transferred $25,110 to their

life insurance company.  The U.S. Trustee asserts that these transfers and

concealments were made with the intent to hinder, delay, or defraud and therefore

grounds exist to deny Debtors' discharge under 11 U.S.C. § 727(a)(2).

Debtors deny that grounds for denial of discharge exist under § 727(a)(2).

Debtors argue that the items and transfers were unintentionally left off their

original schedules due to language barriers and oversight and that they have

amended their bankruptcy schedules to include all of these items and transfers.

Debtors also argue that the gold bangle was sold and the profit was spent on

personal and business expenses, as were other amounts received from cash

advances through their credit card.

The U.S. Trustee also seeks a denial of Debtors' discharge under

§ 727(a)(4)(A), which allows the Court to deny a discharge when a debtor,

knowingly and fraudulently, makes a false oath or account.  The U.S. Trustee

asserts that Debtors signed their bankruptcy schedules and SOFA and then

confirmed their accuracy at the 341 Meeting under oath.  The U.S. Trustee asserts

that these documents contained the following inaccuracies: 1) the income Debtors

reported did not include the cash advances received by using their credit card at

their business and then withdrawing the money from the business, the income

received by having their personal bills paid by the business, $21,600 of income

from renting out their home in Indiana, or $8,000 from the sale of the bangle; 2)

10

Debtors did not disclose that Mr. Govani was an officer of White Horse Liquors, Inc.; 3) Debtors did not disclose the $25,110 repayment of a life insurance loan; 4) Debtors did not disclose the repayment of the loan to Mr. Patel; and 5) Debtors did not disclose all of their jewelry and transfer of the bangle.  The U.S. Trustee argues that these omissions were made knowingly and fraudulently and require the Court to deny discharge under § 727(a)(4)(A).

Debtors disagree that the life insurance loan repayment is required to be disclosed in SOFA question 10.  Additionally, Debtors argue that their income from renting their home in Indiana is not $21,600 as the U.S. Trustee alleges, but is only $6,118 after subtracting costs.  Debtors argue that when calculating income to report in their bankruptcy, they relied on their tax returns prepared by their accountant, which did not include cash advances from their credit cards, and disagree that this constitutes income.  Most importantly, Debtors argue that any omissions were unintentional and the result of a language barrier or oversights. Debtors deny that any of the incorrect information was given knowingly or fraudulently.

Finally, the U.S. Trustee seeks a denial of discharge under 11 U.S.C. § 727(a)(5), which allows the Court to deny a discharge for a debtor's failure to satisfactorily explain the loss or deficiency of assets.  The U.S. Trustee argues that Debtors have failed to adequately explain 1) the loss of the New York Life

11

Insurance policy of $11,644.11, which was deleted from Debtors' original SOFA;

2) the $8,000 cash from the sale of the gold bangle; 3) cash withdrawals from

Debtors' business account totaling $50,366.53;[1] 4) cash withdrawals from Debtors'

personal account for $10,000 on April 18, 2011 and $1,468 on July 28, 2011.

Debtors admit all of these transactions occurred but argue they have

adequately explained that the cash was spent on personal living expenses and

business expenses. Debtors assert that they frequently use cash for expenses and

have sufficiently explained this in testimony and amended disclosures. Debtors

deny that these transactions merit a denial of discharge under § 727(a)(5).

## CONCLUSIONS OF LAW

### I.    Denial of Discharge Under 11 U.S.C. § 727(a)(2)

The U.S. Trustee first argues that Debtors are not eligible for a discharge

under 11 U.S.C. § 727(a)(2), which states:

>    **(a)** The court shall grant the debtor a discharge, unless—
>    . . .
>    **(2)** the debtor, **with intent to hinder, delay, or defraud** a
> creditor or an officer of the estate charged with custody of property
> under this title, has transferred, removed, destroyed, mutilated, or
> concealed, or has permitted to be transferred, removed, destroyed,
> mutilated, or concealed—
>    **(A)** property of the debtor, within one year before the date of
> the filing of the petition; or

---

[1] Total calculated from the following withdraws alleged: $2,300 on 2/3/2011, $3,492.95 on 7/27/2011, $4,473.58 on 8/4/2011, $11,000 on 8/8/2011, $6,000 on 8/30/2011, $3,000 on 9/6/2011, $9,000 on 11/19/2011, $2,000 on 11/28/2011, $2,000 on 12/05/2011, $1,200 on 12/14/2011, $1,000 on 12/28/2011, $1,400 on 1/17/2012, and $3,500 on 1/19/2012.

**(B)** property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2) (emphasis added).  "Denial of a discharge is a harsh remedy and, accordingly, the provisions under § 727 of the Bankruptcy Code 'are strictly construed in favor of the debtor.'" In re Charles, 474 B.R. 680, 683–84 (B.A.P. 8th Cir. 2012) (quoting In re Korte, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)).  "Section 727 was included to prevent a debtor's abuse of the Bankruptcy Code." Korte, 262 B.R. at 471.

The U.S. Trustee must prove each element of § 727 by a preponderance of the evidence. In re Charles, 474 B.R. 680, 683–84 (B.A.P. 8th Cir. 2012) (citing Allred v. Vilhauer (In re Vilhauer), 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011); Fed. R. Bank. P. 4005).  In order to prevail under § 727(a)(2), the U.S. Trustee must prove: "(1) that the act complained of was done within twelve months of the filing of the bankruptcy petition, (2) with intent to hinder, delay or defraud creditors, (3) that the act was done by the bankrupt, and (4) that the act consisted of transferring, removing, destroying or concealing any of bankrupt's property." In re Bateman, 646 F.2d 1220, 1222 (8th Cir. 1981); see also In re Grimlie, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010).  "Proving the requisite actual intent with direct evidence is difficult."  Korte, 262 B.R. at 472–73 (citing In re Schmit, 71 B.R. 587, 590 (Bankr. D. Minn. 1987)). "Thus, such actual intent may be "inferred from the facts and circumstances of the debtor's conduct."  Id.   However, the overriding

13

principle applicable here and in virtually all cases under § 727(a) is that "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor . . . ."  In re Phillips, 476 Fed. Appx. 813, 816 (11th Cir. 2012); see also In re McCarthy, 488 B.R. 814, 825 (B.A.P. 1st Cir. 2013).

The U.S. Trustee alleges Debtors failed to disclose the following assets, or transfer of assets: 1) the sale of a gold bangle; 2) a $8,000 payment to Ratilal Patel; 3) the $6,000 Discover Card charge and subsequent withdrawal from their business; 4) the $4,515.34 of electronics purchased at Best Buy; 5) the $2,802.88 Menards store credit; 6) the jewelry unlisted on Schedule B; and 7) the $25,110 life insurance loan payments.  The U.S. Trustee asserts that these actions were made with the intent to hinder, delay, or defraud and therefore grounds exist to deny Debtors' discharge under 11 U.S.C. § 727(a)(2).

The Debtors do not dispute that the U.S. Trustee has shown that Debtors made the alleged transfers or omissions and that these occurred within one year of filing for bankruptcy.  However, Debtors deny that the U.S. Trustee has shown the second element: that the acts were done "with intent to hinder, delay, or defraud creditors."  11 U.S.C. § 727(a)(2).

14

### a.    Sale of the Gold Bangle

The U.S. Trustee alleges that the sale of the gold bangle was not disclosed on Debtor's original SOFA and the SOFA was only amended to disclose the sale after Discover Card filed an adversary action, bringing the original purchase to light.  Mr. Govani testified that he did not realize the SOFA question was requesting this information and he forgot about the sale when completing the bankruptcy forms.  Further, Debtors' counsel argues that the strange nature of the story—that Mr. Govani struck up a conversation with a hotel guest late one night that ended in an $8,000 cash sale of the bangle—is evidence that the story is truthful, because "he surely could have invented a less colorful one."  Mr. Govani became very emotional at trial when he testified that he had purchased the bangle as a gift for his wife, but then was forced to sell it in order to pay expenses.

The Trustee argues that when originally asked about the bangle, he stated the reason for the purchase was not a gift, but rather a "short-term investment in 24K gold."  Additionally, the Trustee argues that it is a "classic credit card fraud scheme" to buy an asset on credit, resell it, keep the proceeds, and then file for bankruptcy discharging the credit card debt.

The Court finds that Debtor did not transfer the bangle with the "intent to hinder, delay, or defraud" creditors or the estate.  The Court found Mr. Govani's testimony to be very credible.  At the time of the purchase, Debtors had just met

15

with Attorney Janet Hong to negotiate the sale of their business.  Although they

were not necessarily on stable financial ground, the Court believes Mr. Govani's

testimony that he thought everything was going to work out and that they were

even planning a vacation.  The Court also finds that Mr. Govani sold the bangle to

a hotel guest for $8,000 and that this was not done with the intent to "hinder, delay,

or defraud."  Again, the Court found Mr. Govani's testimony very credible.  Bills

were coming due and an opportunity arose to sell the bangle, which Mr. Govani

took and was very embarrassed about at trial when he testified that he sold the

bangle he intended as a gift for his wife.  In short, the Court found Mr. Govani's

testimony to be credible and not indicative of fraudulent intent.  Therefore, the

Court finds that the sale of the bangle is not grounds for a denial of discharge

under 11 U.S.C. § 727(a)(2).

### b.    The $8,000 Payment to Ratilal Patel

The U.S. Trustee alleges that the payment of $8,000 to Mr. Patel is also

grounds for a denial of discharge under 11 U.S.C. § 727(a)(2).  On July 25, 2011,

Debtors paid Mr. Patel $8,000 by cashier's check.  The U.S. Trustee argues that

Debtors did not disclose this on their original SOFA and that an amendment was

made only after the U.S. Trustee requested more information.  Debtors argue that

the transfer was the repayment of a $5,000 loan and the extension of a $3,000 loan.

Mr. Govani testified that Patel is not related to them, but is a family friend who is

16

suffering from cancer and living on Social Security.  The Court again finds Mr.

Govani's testimony to be credible and not indicative of fraudulent intent.  The

Court finds that Mr. Govani did not transfer the money to Mr. Patel with the

"intent to hinder, delay, or defraud" and therefore the payment to Mr. Patel is not

grounds for denial of discharge under 11 U.S.C. § 727(a)(2).

### c.   The $6,000 Discover Card Charge and Subsequent Business Account Withdrawals

The U.S. Trustee also alleges that grounds for denial of discharge exist

under 11 U.S.C. § 727(a)(2) based on Debtors' practice of charging their personal

credit card at the business and then withdrawing cash from their business account.

On July 23, 2011, Debtors charged $6,000 on their personal Discover Card at their

business.  Debtors then withdrew $3,492.95 on July 27, 2011 and $4,473.58 on

August 4, 2011 from their business account.  Mr. Govani admitted that they

charged their credit cards at their business and then withdrew the money from the

business account, essentially receiving cash advances from their credit card.  Mr.

Govani testified, very credibly, that he had called the credit card company and they

approved of the practice, so he did not see anything wrong with it.  The Court finds

that Debtors did not complete these transactions with the intent to "hinder, delay,

or defraud."  Debtors were short on money and using their credit cards to pay for

business and living expenses.  The Court again believes Mr. Govani and does not

believe that Debtors were intentionally racking up credit card debt in order to later

17

discharge it.  Therefore, these transactions are not grounds for a denial of discharge under 11 U.S.C. § 727(a)(2).

### d.    Electronics Purchased at Best Buy

The U.S. Trustee alleges that Debtors purchased $4,515.34 of electronics using their credit cards at Best Buy on August 4, 2011.  Debtors did not list anything on their original schedules that would correspond with the purchase. After inquiry by the U.S. Trustee, Debtors amended their Schedule B on July 3, 2012 to list a MacBook laptop, iPad, and TV projector with remote.  Debtors argue that their failure to report the assets on their original Schedule B was a mistake. Mr. Govani testified that he was overwhelmed at the time of the bankruptcy filing by the circumstances and shame he felt from his financial failings.  Debtors also argue that they have a difficult time communicating and this could have led to the oversight.  Debtors also argue that there would be no reason for Debtors to purposely exclude the assets.  They argue that the total exemption allowed for household items is $14,000 and they have only claimed $5,117 in household goods, leaving plenty of room for the electronics if they had remembered to list them.

The Court finds that Debtors did not intentionally omit the electronics on their original Schedule B and later amended to correct for the mistake.  Debtors' difficulty communicating was very clear at trial.  Mr. Govani's testimony was very

credible and the Court concludes that Mr. Govani did not omit the items with the "intent to hinder, delay, or defraud." Therefore, the omission of the electronics from the original schedules is not grounds for a denial of discharge under 11 U.S.C. § 727(a)(2).

### e.    Menards Store Credit

The U.S. Trustee also alleges that Debtors' omission of a Menards store credit of $2,802.88 from their original Schedule B is grounds for a denial of discharge under 11 U.S.C. § 727(a)(2). Debtors amended their Schedule B to add the credit on July 3, 2012, after inquiry from the U.S. Trustee. Debtors argue that their failure to list the credit on their original schedule was an inadvertent oversight. Debtors argue that it is reasonable for it to be overlooked during discussions with the bankruptcy attorney's office because most people do not hold such credits.

The Court finds that the omission of the Menards credit from the original Schedule B is not grounds for denial of discharge under 11 U.S.C. § 727(a)(2). The Court finds Mr. Govani's testimony that the omission was an innocent oversight credible and finds no evidence of "intent to hinder, delay, or defraud."

### f.    Unlisted Jewelry

The U.S. Trustee alleges that Debtors omitted jewelry from their original Schedule B. The original Schedule B listed a watch, gold earrings, and a silver

ring with a total value of $2,000.  Debtors later amended their Schedule B to list an

additional diamond locket and diamond ring with a value of $3,000.  The Trustee

argues that there is no plausible way that Debtors could have not understood the

Schedule B request to list all "furs and jewelry."

The Court finds that Debtors did not intentionally omit the additional

jewelry from their original Schedule B.  It was clear at trial that Debtors have a

very difficult time communicating and knowing what is being asked of them.  The

Court finds Mr. Govani's testimony that the omission was unintentional to be

credible.  Therefore, the Court finds that Debtors did not omit the jewelry with the

intent to "defraud, hinder or delay" and the omission is not grounds for discharge

under 11 U.S.C. § 727(a)(2).

### g.        Life Insurance Loan Repayment

The U.S. Trustee alleges that Debtors repaid a $25,110 life insurance loan

within one year of filing. The Trustee alleges that Debtors did not report the

transaction on their original SOFA and this is grounds for denial of discharge

under 11 U.S.C. § 727(a)(2).  Debtor argues that they did not understand that this

transaction fell within the meaning of SOFA question 10 and did not intentionally

omit the information.  As additional evidence of an innocent intent, Debtors allege

that they told their attorney about the transaction and Debtors listed the policy on

their original Schedule B.

20

The Court does not view the Debtors' action of repaying the debt or omitting it from their original SOFA as the transfer or concealment with the "intent to hinder, delay, or defraud."  Debtors simply repaid an outstanding debt and the Court finds Mr. Govani's testimony credible that they did not intentionally omit it from the original SOFA.  Therefore, the life insurance repayment is not grounds for denial of discharge under 11 U.S.C. § 727(a)(2).

## II.    Denial of Discharge Under 11 U.S.C. § 727(a)(4)(A)

The U.S. Trustee also asserts that Debtors are not entitled to a discharge under 11 U.S.C. § 727(a)(4)(A), which states that the "court shall grant the debtor a discharge, unless . . . (4) the debtor knowingly and fraudulently, in or in connection with the case-- (A) made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  In order to establish a false oath under § 727(a)(4)(A), the U.S. Trustee is required to prove that "(1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Debtor's bankruptcy case." In re Freese, 460 B.R. 733, 738 (B.A.P. 8th Cir. 2011) (quoting In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005)).  Debtors admit the omissions and misstatements were made and were under oath, but deny that Debtors knew they were false, made the statements with fraudulent intent, and that all the statements were material.

21

"For such a false oath or account to bar a discharge, the false statement must be 'material.'"  Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (citing In re Olson, 916 F.2d 481, 484 (8th Cir. 1990)).   "The subject matter of a false oath is 'material' if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (quoting In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984)).  "If the estate would have no interest in property that was omitted from a schedule, the omission is not material and should not be a ground for denying discharge. Similarly, the omission of property of trivial value or property not subject to the claims of creditors has been treated as immaterial." Vol. 6, Collier on Bankruptcy ¶ 727.04[1][b].

"[F]raudulent intent may be established by circumstantial evidence." In re Charles, 474 B.R. 680, 684 (B.A.P. 8th Cir. 2012). "Statements made with reckless indifference to the truth can be regarded as intentionally false." Id.  "Statements made by a debtor in his verified petition, schedules, and statements and during the meeting of creditors are made under oath."  In re Rohde, 400 B.R. 230, 235 (Bankr. N.D. Iowa 2009).  Again, the "determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor or the debtors . . . ." In re Phillips, 476 Fed. Appx. at 816.

22

The U.S. Trustee alleges that Debtors should be denied a discharge under 11 U.S.C. § 727(a)(4)(A) based on several grounds: 1) Debtors did not report all of their income from their business, rental home, or the sale of the gold bangle; 2) Debtors did not disclose Mr. Govani's position as an officer of White Horse Liquors, Inc.; 3) Debtors did not disclose the $25,110 life insurance loan repayment; 4) Debtors did not disclose the $8,000 loan repayment to Mr. Patel; and 5) Debtors did not disclose all of their jewelry and transfer of the bangle. Debtors argue that these omissions or misstatements were innocent oversights.

### a.    Income Reported

The U.S. Trustee argues that Debtors did not disclose income they received by transferring money from their business account, having their bills paid by the business, $21,600 from renting their home in Indiana, and $8,000 from selling the gold bangle. Debtors allege that they did not make the misstatements knowingly or have fraudulent intent when they failed to report all income. Debtors argue that they did not know that credit card advances made by using their credit cards at their business could constitute income. Mr. Govani testified that he relied on their accountant and tax returns when reporting his income. Debtors also argue that the rental income is not $21,600, which is the amount of gross rental income, but is actually $6,118, which is what they actually received after subtracting costs.

Debtors argue that the omission of the $6,118 of rental income and the $8,000

from the sale of the gold bangle was an unintentional oversight.

The Court finds that the Debtors did not knowingly and fraudulently omit

this income.  Mr. Govani credibly testified that the omissions were unintentional.

Mr. Govani gave his accountant all of the relevant information and relied on his

conclusions when reporting Debtors' income.  Debtors amended the SOFA to

correct any misstatements.  Therefore, the Court finds that Debtors' reported

income on their SOFA is not a basis for a denial of discharge under 11 U.S.C.

§ 727(a)(4)(A).

### b. White Horse Liquors, Inc.

The U.S. Trustee also alleges that Mr. Govani's omission of his position as

an officer of White Horse Liquors, Inc. is the basis for denial of discharge under 11

U.S.C. § 727(a)(4)(A).  Debtors previously operated White Horse Liquors, Inc. in

Indiana.  Mr. Govani testified that he decided to get out of the liquor business

based on both his and Mrs. Govani's moral objections to operating an alcohol-

based establishment.  The company is in existence, but has been inactive for

several years.  Debtors argue that this omission was an inconsequential and

innocent oversight.

The Trustee has not put forth any evidence of materiality of this omission

and the Court finds that regardless, it was an innocent oversight by Debtors.  Mr.

Govani testified that he simply forgot about it and the Court finds that testimony credible under the circumstances. Therefore, the omission of Mr. Govani's position as an officer of White Horse Liquors, Inc. is not a basis for a denial of discharge under 11 U.S.C. § 727(a)(4)(A).

### c.      Life Insurance Loan and Patel Loan Repayment

The U.S. Trustee alleges that Debtor's omission of their $25,110 repayment of a life insurance loan and $5,000 repayment of a loan from Mr. Patel is grounds for denial of discharge under 11 U.S.C. § 727(a)(4)(A). Debtors argue that disclosure of the repayment of the life insurance loan is not necessarily requested in SOFA question 10, and even if it is, Debtors were not aware that is what it was asking and did not omit the information knowingly and fraudulently. Debtors argue that the omission of the loan repayment to Mr. Patel was also not done knowingly and fraudulently.

The Court finds that the omissions were not made knowingly or fraudulently. The Court finds that Debtors misunderstood the question and omitted the information as an oversight. Additionally, the filings were amended to include the information. Therefore, the Court finds that 11 U.S.C. § 727(a)(4)(A) is not grounds for a denial of discharge for omitting the loan repayments.

### d.    Jewelry and Transfer of the Bangle

The U.S. Trustee alleges that Debtors knowingly and fraudulently omitted jewelry from their Schedule B and omitted the sale of the gold bangle from SOFA question 10.  The Trustee argues that this is grounds for denial of discharge under 11 U.S.C.§727(a)(4)(A).  Debtors argue that they did not know that SOFA question 10 was asking for this information and the omission was an innocent oversight.  Additionally, Debtors argue that the jewelry omitted from their original Schedule B was also unintentional and that they amended the Schedule to add the missing jewelry.  Mr. Govani testified that he was overwhelmed at the time of the bankruptcy filing by the circumstances and shame he felt from his financial failings.

The Court finds that Debtors jewelry omissions were not made knowingly and fraudulently.  Debtors misunderstood what was being asked of them and missed assets in an unintentional oversight.  The Court finds Mr. Govani's testimony credible and finds that Debtors did not make the omissions knowingly and fraudulently and therefore the jewelry is not grounds for denial of discharge under 11 U.S.C. § 727(a)(4)(A).

### III.    Denial of Discharge Under 11 U.S.C. § 727(a)(5)

Finally, the U.S. Trustee alleges that the Court should deny a discharge under 11 U.S.C. § 727(a)(5), which states that the Court should grant a discharge

26

unless: "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(5).

"If the objecting party demonstrates a deficiency of assets, the burden shifts to the debtor to explain the loss." In re Vilhauer, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011). "If the explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge. The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing." Id.

The U.S. Trustee alleges that Debtors have failed to adequately explain: 1) the loss of the New York Life Insurance policy of $11,644.11, which was deleted from Debtors' SOFA; 2) the $8,000 cash from the sale of the gold bangle; 3) cash withdrawals from Debtors' business account totaling $50,366.53; 4) cash withdrawals from Debtors' personal account for $10,000 on April 18, 2011 and $1,468 on July 28, 2011.   The U.S. Trustee argues that Debtors' failure to account for these assets is grounds for a denial of discharge under 11 U.S.C. § 727(a)(5). Debtors argue that they have adequately explained all assets.

### a.      Removal of the New York Life Insurance Policy

The U.S. Trustee argues that Debtors have not adequately explained the removal of an insurance policy worth $11,644.11 from the Debtors' SOFA. Debtors argue that this removal was an error and the policy is still an asset of

27

Debtors. The Court finds that the life insurance policy is still an asset of Debtors

and therefore they do not have a loss to explain.

### b. Cash from the Sale of the Gold Bangle and Account Withdrawals

The U.S. Trustee alleges that Debtors have failed to adequately explain the

loss of the $8,000 from the sale of the gold bangle, $50,366.52 from business

account withdrawals, and $11,468 from personal account withdrawals. The U.S.

Trustee argues this is grounds for a denial of discharge under 11 U.S.C.

§ 727(a)(5). Debtors argue that the cash from these transactions was used to pay

living expenses, such as eating out. Mr. Govani testified that because Debtors

lived in their hotel, they do not have a kitchen and must eat out frequently. Mr.

Govani also testified that Debtors frequently use cash for their expenses.

The Court finds that the amounts in question were spent on business and

personal expenses. The Court finds Mr. Govani's testimony very credible and

does not believe Debtors are hiding this money. Debtors appeared to maintain a

very meager standard of living and there is no evidence in the record to the

contrary. Therefore, Debtors have adequately explained the loss of these assets

and grounds do not exist to deny Debtors' discharge under 11 U.S.C. § 727(a)(5).

## CONCLUSION

The Court finds that the U.S. Trustee has failed to prove all of the elements of 11 U.S.C. § 727(a)(2), § 727(a)(4)(A), and § 727(a)(5). Judgment will be entered in Defendant/Debtor's favor.  In short, this Court found Mr. Govani's testimony to be credible and believable.  This finding was dispositive in this case.[2]

**WHEREFORE**, judgment is entered in Defendant/Debtors' favor. The above-captioned adversary is **DISMISSED**.

Dated and Entered:   April 17, 2014.

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**

---

[2] As well-respected bankruptcy scholar Patrick Bauer has explained, "Cases have faces."  Professor Patrick B. Bauer, Remarks at University of Iowa College of Law (April 14, 2014).